IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Eddie Arnold Gore,<br><br>    Plaintiff,<br><br> vs.<br><br>South Carolina Department of<br>Corrections; Robert Ward, in his<br>individual capacity; and Robert M.<br>Stevenson, in his individual capacity,<br><br>    Defendants. | C/A No.: 3:10-1885-MBS-SVH<br><br>REPORT AND RECOMMENDATION |

  In this employment discrimination case, plaintiff Eddie Arnold Gore ("Plaintiff") is suing his employer South Carolina Department of Corrections ("SCDC") and two SCDC employees, Robert Ward ("Ward") and Robert M. Stevenson ("Stevenson"), in their individual capacities (collectively "Defendants"). Plaintiff alleges a racial discrimination claim pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"), against the SCDC, as well as claims against Ward and Stevenson pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1985.

  This matter comes before the court on Defendants' motion for summary judgment. [Entry #46]. Plaintiff filed a response to the motion [Entry #52], and Defendants filed a reply. [Entry #54]. The motion for summary judgment having been fully briefed, it is ripe for disposition.

  All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(g) (D.S.C.).

Because the motion for summary judgment is dispositive, this report and recommendation is entered for the district judge's consideration. For the reasons that follow, the undersigned recommends Defendants' motion for summary judgment be granted.

I.  Factual Background

Plaintiff began working for the SCDC as a Correctional Officer II at Perry Correctional Institution ("Perry") in February 1988. Gore Dep. [Entry #46-2 at 2]. Over the following years, Plaintiff applied for and received higher ranking positions, finally becoming the Major in October 2005 at Broad River Correctional Institution ("BRCI"), a Level Three or maximum security prison. *Id.* at 3–4. Most of the inmates housed in Level Three institutions are long-term, violent offenders. *Id.* at 4. The Major is the senior uniformed employee in an SCDC institution. Ward Dep. [Entry #46-3 at 3]. The Major spends the majority of his time insuring that security measures and the security level of the institution are maintained. *Id.* at 4–7. The Major is also the chief contact between the Warden and all persons who wear uniforms in the institution. *Id.* The Major investigates matters that come to his attention or that he is directed to investigate by the Warden or a senior officer. *Id.* When Stevenson became Warden at BRCI, he instructed Plaintiff to turn all investigations over to the institutional investigator, David Hurt ("Hurt"). Gore Dep. [Entry #46-2 at 50].

On August 14, 2007, at 6:50 p.m., a perimeter fence alarm sounded at BRCI. Investigative Report [Entry #46-3 at 9]. Two ladders were discovered on the perimeter fences. *Id.* A roll call count revealed that inmates Kelly Samples and Andrew Storey had

escaped. *Id.* Storey was returned to BRCI later that evening, but Samples was not apprehended until the evening of August 15, 2007. *Id.* Plaintiff was not at the institution when the escape occurred, but was called shortly afterward. *Id.* at 11.

The SCDC Division of Investigations conducted an investigation into the escape and issued its report on October 22, 2007. *Id.* at 9–16. The report indicated the following:

> Inmate Bruce Hayes, AKA "Nikki," alleged that on about July 20-22, 2007, he went before Major Gore for an administrative charge and advised Gore that inmate Kelly Samples was planning an escape in August from Prison Industries. Hayes stated that he told Gore that Samples had told him about his plans to escape, Lieutenant Spann had been present. Gore requested proof, which he could not provide. Gore sent him back to the yard to find out more information. On another date Gore made contact with him, asking for details regarding the escape. He advised Gore that he had no details because he was on lock up.
>
> Lieutenant Kenneth Spann stated that he was present in the office when Major Gore was talking to inmate Bruce Hayes. Hayes was trying to help himself on a contraband charge that he received. Hayes told the Major that inmate Samples was going to "escape." Hayes told the Major that Samples was going to meet him after he got out in December. Spann said that the Major sent Hayes back to the dorm to try and get more information. The Major did not tell him to shake down Hayes or Samples.
>
> Major Eddie Gore stated that he had spoken with inmate Bruce Hayes several weeks prior to Samples' escape. Hayes told him that inmate Samples was planning on "seeing him after he got released in December." He does not recall Hayes saying the word "escape." He did not advise the Warden or Associate Warden of his conversation with Hayes. Hayes was trying to help his self out on a possession of narcotics charge. He sent Hayes back to the yard to see if he (Hayes) could gather more information about Samples. Gore stated that he recalls asking someone to have Hayes and Samples cells shook down. He cannot remember who he told to shake down the cells.

Investigation Report [Entry #46-3 at 13–14].

According to Plaintiff, he gave Officer Toland, one of the officers present, a note

3

to take to Hurt, and asked "whoever else was in the office" and the captain to send a message to the Warden. Gore Dep. [Entry #46-2 at 33, 40]. Plaintiff says he was told by the Warden to let Hurt handle investigations, and he reported this information to Hurt by having someone place a hand-written note on yellow legal paper under Hurt's office door. *Id.* at 39. According to Plaintiff, he did not follow-up to make sure the captain had informed the warden, because the captain was supposed to respond back to him. *Id*. at 40.

On November 15, 2007, attorney Bart Vincent ("Vincent") in the SCDC General Counsel's office sent an e-mail to Ward concerning his thoughts on the escape. [Entry #46-3 at 17]. According to the email, Vincent believed there was credible information that Samples was going to escape. Vincent believed Plaintiff had failed to follow the protocol and policy requiring that the inmate be locked up to investigate the matter further. *Id.* Vincent advised Plaintiff be demoted and that possibly more severe action should be considered. *Id.*

On January 14, 2008, Warden Stevenson notified Plaintiff of a review meeting to occur on January 15, 2008. Plaintiff was charged with "Negligence in Carrying Out Job Responsibilities in a Security Setting" and was reassigned as a Captain and transferred to Manning Correctional Institution ("MCI"), effective February 2, 2008. [Entry #46-3 at 18]. By letter dated January 18, 2008, Warden Stevenson informed Plaintiff of his reassignment.[1] *Id.* at 19. Plaintiff's state classification title, pay band and salary did not

---

[1] Defendants argue that Plaintiff's reassignment was not a demotion because, despite the change in title, his salary did not change. Because a decision on this issue is not necessary to the undersigned's recommendation in this case, it is not discussed.

4

change. *Id.* Plaintiff alleges disparate treatment and racial discrimination based on his demotion.

Plaintiff also alleges a failure to promote in violation of Title VII. Specifically the complaint alleges: "On October 1, 2008, the plaintiff was denied a promotion from captain to associate warden as he had been denied several other promotional opportunities within the years prior thereto." Comp. ¶ 8 [Entry #1]. Plaintiff filed a Charge of Discrimination with the South Carolina Human Affairs Commission ("SCHAC") related to an October 1, 2008 denial of promotion. [Entry #46-2 at 69]. The parties' briefing discusses two instances in October of 2008 where Plaintiff was denied a promotion to associate warden, but does not specify which occurred on October 1, 2008. From the excerpts provided, Plaintiff's deposition also appears to be ambiguous as to this issue. Gore Dep. [Entry #46-2 at 28, 55]. Therefore, the court liberally construes the complaint and SCHAC charge as encompassing both promotion denials in October of 2008.

II.  Discussion

   A.  Standard of Review

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact

cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

B.  Analysis

1.  Discrimination/Disparate Treatment

Plaintiff's race discrimination cause of action alleges two adverse employment actions: 1) alleged demotion and 2) failure to promote. The court analyzes each separately. Because Plaintiff lacks any direct evidence of race discrimination, he proceeds on the indirect evidence burden-shifting method of proof established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973).

a. Alleged Demotion Based on Disparate Treatment/Discipline

In a disparate discipline case, a plaintiff has the initial burden to establish a prima facie case by the preponderance of the evidence by showing that (1) he is a member of the class protected by Title VII; (2) that the prohibited conduct in which he engaged was comparable in seriousness to misconduct of employees outside the protected class; and (3) the disciplinary measures enforced against him were more severe than those enforced against the non-protected employees. *Cook v. CSX Transp. Corp.*, 988 F.2d 507, 511 (4th Cir. 1993). It is undisputed that Plaintiff, an African-American, is a member of a protected class. With regard to the second element, Plaintiff has failed to demonstrate

that the conduct in which he engaged was comparable in seriousness of employees outside of the protected class.

Plaintiff has named four white males as comparators, all of whom were working as majors at other SCDC institutions when inmates escaped from their respective institutions. *See* Pl's Resp. Br. [Entry #52 at 10]. However, Plaintiff has provided no information regarding the circumstances of each escape. *Id.* Specifically, Plaintiff has not provided any evidence that there were any allegations that the alleged comparators had any prior knowledge of the potential for an escape or failed to follow protocol with regard to alerting superiors to the potential of an escape. In fact, Plaintiff could not testify that any of the alleged comparators were involved with the facts surrounding the respective escapes in any regard. Gore Dep. [Entry #46-2 at 46–48].

By contrast, in the case at hand, Plaintiff agreed that SCDC policy dictates that he should inform his superior of any information that leads him to believe there may be a security threat, but also admits that he did not personally inform the warden or associate warden about the information he received from Hayes. Gore Dep. at 167–168 [Entry #46-2 at 54–55]. Although Gore testified that he ordered the captain to inform the warden, he never followed up to ensure the warden had received the message. *Id*. at 132 [Entry #46-2 at 40].

Plaintiff has provided no allegations regarding similar circumstances surrounding the escapes at the alleged comparators' institutions. Therefore, Plaintiff has not shown that the alleged comparators engaged in conduct of comparable seriousness to that of Plaintiff with regard to the escapes. Plaintiff's failure to identify a similarly situated non-

protected employee who engaged in similar and/or comparable conduct and received less severe disciplinary action makes his claim appropriate for dismissal. *See Lightner v. City of Wilmington*, *N.C.*, 545 F.3d 260, 264–265 (4th Cir. 2008) (citing *Moore v. City of Charlotte*, 754 F.2d 1100, 1105–06 (4th Cir. 1985)).

Even if Plaintiff could set forth a prima facie case of discrimination based on disparate discipline, Defendants have set forth a legitimate non-discriminatory reason for his demotion. Specifically, Defendants submit that Plaintiff was reassigned as a captain at MCI because he was negligent in carrying out his job duties based on his failure to take proper action when he was informed of an escape. [Entry #46-3 at 19].

Because the SCDC has established a legitimate, non-discriminatory reason for Plaintiff's demotion, to survive summary judgment, Plaintiff has the burden of showing that the SCDC's articulated reasons are pretextual. *See Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 147–148 (2000) (it is the plaintiff's burden to create an inference that the defendant's proffered reason is a pretext for intentional discrimination). A plaintiff must produce "sufficient evidence to find that the employer's asserted justification is false," which, when coupled with the prima facie case, may permit the trier of fact to conclude that unlawful discrimination has occurred. *Id.* at 148.

Here, Plaintiff has not provided evidence of pretext. Instead, Plaintiff argues that there is a dispute of fact as to the extent of his knowledge of the potential for an escape. However, assuming Plaintiff's version of the facts as the court must, it is the decision-maker's perception of Plaintiff's job-performance, not the perception of the employee, that is determinative. *King v. Rumsfeld*, 328 F.3d 145, 149, 151 (4th Cir. 2003); *De*

*Jarnette v. Corning, Inc.*, 133 F.3d 293, 299 (4th Cir. 1998) (citations omitted). Here, SCDC conducted an investigation of the incident, including interviewing Plaintiff. After a review of the relevant information contained in the investigation report, Attorney Vincent recommended Plaintiff be demoted based on his perception that Plaintiff had not followed protocol. [Entry #46-3 at 17]. Although Plaintiff may dispute the accuracy of some witnesses' versions of the facts as contained in the report, Plaintiff has not disputed that the report accurately sets forth the results of the investigation. Plaintiff has not disputed that the SCDC perceived Plaintiff as negligent in performing his job duties, and he has failed to show SCDC's proffered reason for demoting him was pretextual. Therefore, the undersigned recommends Defendants be granted summary judgment on Plaintiff's Title VII claim related to his demotion.

b. Failure to Promote

To establish a prima facie case for a failure to promote, Plaintiff must show that (1) he is a member of a protected group; (2) he applied for the position; (3) he was qualified for the position; and (4) he was rejected for the position under circumstances giving rise to an inference of unlawful discrimination. *Carter v. Ball*, 33 F.3d 450, 458 (4th Cir. 1994). It is undisputed that Plaintiff has shown the first three elements. The court will also assume arguendo[2] that Plaintiff has shown the fourth element.

Therefore, the burden shifts to Defendants to show a non-discriminatory reason for

---

[2] Plaintiff argues that he has met the burden of proving the fourth element of the prima facie case because a white applicant was selected and he was not. As more fully set forth above, Plaintiff has failed to meet his ultimate burden in this case and therefore the assumption of the fourth element does not affect the ultimate recommendation.

not promoting Plaintiff. Defendants submit that Plaintiff was not promoted because he did not rank even in the top five interviewees for either position.

Between September 2, 2005 and July 2010, Plaintiff applied for 29 positions within the SCDC, thirteen of which were associate warden positions. *Id*. at ¶ 3–5. Of those thirteen positions, nine black individuals and four white individuals were hired. *Id*. Plaintiff interviewed for an associate warden position at McCormick in 2008, and the interviewers were Dennis Patterson and Leroy Cartledge, both of whom are black males. Gore Dep. [Entry #46-2 at 28–29]; Riley Aff. ¶¶ 6–7 [Entry #46-10]. Nine people were interviewed for the position, and Plaintiff ranked seventh after the interviews. Riley Aff. ¶ 8 [Entry #46-10]. Scott Lewis, a white male, was selected for the position. *Id*. at ¶ 9.

Plaintiff also interviewed for an Associate Warden position at BRCI in October 2008. *Id*. at ¶ 10. Twelve people were interviewed for this position by interviewers Jimmy Sligh and Robert Stevenson, both white males. *Id*. at ¶ 12. Plaintiff ranked ninth after the initial interviews. *Id*. Of the twelve people interviewed, eight were black. *Id*. The candidates who ranked first and second after the initial interviews were Stanley Leaks, a black male, and John Barkley, a white male. *Id*. at ¶ 13–14. John Barkley was hired for the position. *Id*.

Because Defendants have set forth a legitimate non-discriminatory reason for not promoting Plaintiff, Plaintiff must show Defendants' reason is pretextual. Plaintiff argues that he was better qualified than Barkley who received the position at BRCI, because Plaintiff had previously worked at a level-three security prison, and Barkley had not. However, Plaintiff has not suggested any flaw in the interview process and does not

10

contest the ranking results. Therefore, Plaintiff has not presented sufficient evidence of pretext to avert summary judgment in the face of Defendants' nondiscriminatory explanation for not promoting him. *See Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 319–320 (4th Cir. 2005) (finding that Plaintiff had failed to forecast sufficient evidence of pretext to avert summary judgment, even assuming Plaintiff was more qualified than the person promoted, where Plaintiff did not allege a flaw in the rating system or that the evaluations had not been fairly conducted). Thus, the undersigned recommends Defendants' motion for summary judgment be granted with regard to his failure to promote claim.

2. Plaintiff's claim pursuant to 42 U.S.C. § 1983

Plaintiff has also brought a claim pursuant to 42 U.S.C. § 1983 against individual defendants Stevenson and Ward. The Fourth Circuit has held that a claim brought pursuant to § 1983 should be analyzed consistent with those principles which govern consideration of Title VII claims. *See Lightner*, 545 F.3d at 263 n.*; *Love-Lane v. Martin*, 355 F.3d 766, 786 (4th Cir. 2004). Therefore, based on the same reasoning employed in recommending summary judgment on Plaintiff's Title VII claims, the undersigned recommends Stevenson and Ward be granted summary judgment on Plaintiff's § 1983 claim.

3. Plaintiff's claim pursuant to 42 U.S.C. § 1985

Plaintiff has asserted a claim for conspiracy pursuant to 42 U.S.C. § 1983 against defendants Stevenson and Hurt. The Fourth Circuit has held:

The law is well settled that to establish a sufficient cause of action for

11

> "conspiracy to deny equal protection of the laws" under section 1985(3), a plaintiff must prove: (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy. Moreover, the law is well settled that to prove a section 1985 "conspiracy," a claimant must show an agreement or a "meeting of the minds" by defendants to violate the claimant's constitutional rights.

*Simmons v. Poe*, 47 F.3d 1370, 1376–77 (4th Cir. 1995).

Here, Plaintiff has failed to set forth any evidence of a conspiracy and has instead relied on the allegations of the complaint. Although Plaintiff argues conspiracy may be inferred from the nature of the acts done, the relationship of the parties, and the interests of the alleged conspirators, Plaintiff has failed to show how Defendants' actions or their relationship and interests tend to show they were engaged in a conspiracy to deprive Plaintiff of his rights. Additionally, Plaintiff has failed to allege an overt act in furtherance of the conspiracy. Although he argues that Defendants relied on Hayes' statement without a polygraph, even though Plaintiff had a different version of the events, Plaintiff fails to acknowledge that another officer was present during the conversation between Hayes and Plaintiff. Furthermore, Plaintiff's argument that Stevenson's order to him to defer to Hurt for all investigations supports his claim for conspiracy is also unavailing. That decision was made well before the inmate escape and Plaintiff has not provided any support for the allegation that it was made to "pin" the 2007 escape on him. *See* Pl.'s Brief at 15–16 [Entry #52]. As Plaintiff has not provided sufficient evidence to show a conspiracy pursuant to 42 U.S.C. § 1985, it is recommended Defendants be granted summary judgment on the conspiracy claim.

III.   Conclusion

For the foregoing reasons, it is recommended Defendants' motion for summary judgment [Entry #46] be granted and this case be dismissed in its entirety.

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

April 16, 2012  
Columbia, South Carolina

Shiva V. Hodges  
United States Magistrate Judge